# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

Case No: 0:20-cv-1105

Brion Finlay and all others similarly situated,
*Plaintiffs*

vs.

MyLife.com Inc.,
*Defendant*

# CLASS ACTION COMPLAINT

Plaintiff, by and through his attorneys, for his Complaint against Defendant and on behalf of all others similarly situated, upon personal knowledge as to his own facts and conduct and on information and belief as to all other matters, states and alleges as follows:

## Introduction

1. Until recently Mr. Finlay was an executive at a small engineering firm. He is presently interviewing for new jobs. Like all individuals in similar circumstances, Mr. Finlay's success in finding employment is highly reliant on maintaining a good name and reputation. Because Mr. Finlay is presently exploring new employment options, it is common for potential employers to perform a quick internet search using terms similar to "Brion Finlay".

2. Searching "Brion Finlay" or similar terms using Google (accessed through an anonymous browser window) produces the following result: "Brion Finlay (C), 42- Minneapolis, MN Has Court or Arrest Records …"

3. The search result displays in a browser window as follows:

1



4. Upon clicking on the link, users are brought to a page simultaneously created by Defendant that states, "**Brion DOES have Arrest or Criminal Records**" (emphasis original).

5. The page displays as follows:

6. The site also lists Mr. Finlay's "reputation" score as 2.32- 3.51.

7. Upon attempting to view Mr. Finlay's records controlled by the Defendant, the company states that Mr. Finlay's profile may contain "graphic content and sensitive details".

8. The company even states that Mr. Finlay is a sex offender, which he is not.

9. Page viewers are then offered additional information for a fee.

10. MyLife.com claims to be in the business of tracking data on "reputations" for the purpose of "keeping yourself safe" from, *inter alia*, "home service providers".

11. In actuality, MyLife's true business appears to be a classic cyber extortion scheme whereby the company posts negative information online in the hope that individuals will "claim" the page with the negative information by enrolling in a monthly plan costing between $13.95 and $16.95 per month (minimum commitments required).

12. Once the user (an unwitting individual attempting to "improve" their reputation or, in some cases, a third party) pays MyLife, the company then attempts to up-sell users by asking them to purchase additional levels of "control" for the pages the company produces.

13. In so doing, MyLife markets reputation and consumer report repair services directly to the same individuals about whom the company posts negative and defamatory information.

14. MyLife posts some information to individual pages ("template pages") to optimize exposure during individual name queries using search engines: Such behavior assures MyLife's data will display in search results when an individual searches for a MyLife victim's name.

15. To draw in unwitting individuals, MyLife advertisements suggest that a poor reputation score could cost someone a job; for example, the company states, "Did you ever send out your resume and never hear back?" and "A bad reputation can hurt you personally and professionally."

16. After an individual clicks on any one of Defendant's pages, containing a basic template including name information, Defendant thereafter queries a variety of public record databases and other less reliable sources to obtain information on the individual about whom the search is being conducted.

17. Defendant then displays the information on a "report page" posted and displayed after the search concludes.

18. The report page generated by Defendant does not, however, contain the aggregated information in the same form in which it was obtained from the third party sources.

19. Instead, Defendant adds to the information giving its own (often incorrect) interpretation of the information it obtains.

20. For example, Defendant incorrectly interprets noncriminal petty misdemeanors issued in Minnesota (including various minor traffic tickets) as "criminal records" and thereafter states that individuals, Mr. Finlay (and counsel) included, with such minor tickets have "criminal or arrest records".

21. Because petty misdemeanors are not crimes in Minnesota, this statement is false on its face.[1]

22. Plaintiff alleges that Defendant intentionally posts this false information in an effort to cause maximum reputational harm (or the perception thereof) in an effort to extort payment from individuals.

23. Various sources note that as of June 2019, the Federal Trade Commission and the Better Business Bureau ("BBB") received nearly 30,000 complaints from consumers about the MyLife.com website.

24. Of those received, 6,800 were received by the BBB in an 11-month span from 2018-2019.

25. According to the same sources, a chief complaint of individuals is "that they requested the removal of personal information from MyLife.com, but are either refused or asked to pay to have the information removed."

26. Steve McFarland, president and CEO of Better Business Bureau of Los Angeles & Silicon Valley, said consumers have complained to the BBB that the website uses scare tactics to gain paid subscribers.

---

[1] Minnesota Statute 609.02 Subdivision 4a. which states: "'Petty misdemeanor' means a petty offense which is prohibited by statute, **which does not constitute a crime** and for which a sentence of a fine of not more than $300 may be imposed."

27. Plaintiff alleges that in addition to these scare tactics, Defendant actively and knowingly engages in defamation with malice, *inter alia*, falsely reporting criminal records exist, in the hope of extorting payment from individual consumers.

## Statement of Jurisdiction and Venue

28. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act ("FCRA"), and 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). CAFA explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a state different from any defendant, and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Mr. Finlay is a citizen of Minnesota. On information and belief, MyLife.com, Inc. is a citizen of Delaware. On information and belief, the amount in controversy exceeds $5,000,000.00.

29. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## Parties

30. Plaintiff is an adult resident of Minnesota.

31. Defendant MyLife.com, Inc. is a foreign consumer reporting agency registered in the State of Delaware.

32. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant conducted business in the State of Minnesota and in the County of Hennepin.

**Facts**

33. MyLife is a "consumer reporting agency" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f) because the company uses the internet to collect consumer information including general reputation scores, and thereafter attempts to sell consumer reports to third parties, including individuals without a permissible purpose.

34. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

35. Defendant's disclosures and report pages constitute "consumer reports" as defined by § 1681a(d) because Defendant's reports purport to reflect the character, general reputation, personal characteristics, and/or mode of living of individuals.

36. Defendant actively markets its consumer reports to individuals who are seeking to hire home service providers and others.

37. Furthermore, Defendant indirectly – and in some cases directly – markets its "reputation score" to employers by touting the importance of assuring that the individuals with whom they do business have "good reputations".

38. In its advertising, the company expressly acknowledges that its reputation scores may be used by employers and that failure to have a good reputation score on its site may result in loss of employment opportunity.

39. Defendant, despite disclaiming any liability under the FCRA in the site terms, does nothing to assure its reports are not used by potential employers.

40. In fact, the company allows individuals in personal and business capacities to view reports even if they refuse to certify that they are not using the reports for employment purposes.

41. It is also true that various uninformed individuals regularly consult MyLife.com reports in making home service provider selections and other hiring decisions.

42. Defendant prepared and issued consumer reports concerning the proposed class representative, Mr. Finlay, and various proposed class members that also included false and inaccurate information.

43. Defendant, as part of its core business process, publicly displays consumer report information, including that of Mr. Finlay, to various individuals who do not have a permissible purpose for receiving such information.

44. Various individuals seeking to employ Mr. Finlay and other proposed class members have also consulted consumer reports furnished by Defendant.

45. The direct result of Defendant's false reporting is significant damage to the perceived reputations of Plaintiff and other proposed class members, thereby impacting their employment opportunities and causing such persons exceptional personal stress.

46. Defendant's reporting has also resulted in an unwarranted intrusion into Plaintiff's and the other proposed class member's personal affairs.

47. As a result of Defendant's conduct, various class members have suffered from intrusion into their personal affairs, anger, frustration, anxiety and, in some cases, loss of employment opportunity and general standing in the community.

## CLASS ALLEGATIONS

48. Plaintiff seeks to certify two classes of harmed individuals.

49. Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(1)(B), (2) and (3) related to Claims One and Two for which monetary, injunctive, and declaratory relief is sought.

50. This Class is defined as: "All individuals whose consumer reports maintained by Defendant have been disclosed to persons without a permissible purpose as defined by 15 U.S.C § 1681b."

51. This Class is referred to as the "Privacy Class."

52. Plaintiff Mr. Brion Finlay also seeks class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(1)(B), (2) and (3) related to Claims One, Two, and Three for which monetary and injunctive and declaratory relief is sought.

53. This Class is defined as: "All individuals whom Defendant reports as having 'Criminal or Arrest Records' who in actuality do not have any such records."

54. This Class is referred to as the "the Defamed Class".

55. A class action is the only practicable means by which Plaintiffs and unknown members of the Privacy Class and the Defamed class can challenge Defendant's illegal disclosure of their consumer information.

56. As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

57. **Numerosity:** The exact sizes of the classes are unknown by Plaintiff, but each Class plainly meets the numerosity requirement, thereby making joinder impracticable. Based on the information provided on Defendant's website, Defendant claims it has more than 300 million public pages with information on "almost everyone in America". With regard to the defamed class, in Minnesota alone Defendant has systematically reported hundreds of thousands of people with minor non-criminal driving infractions as incorrectly having a "criminal record".

58. The Defamed Class consists of millions of people who cannot or will not be able to afford to retain counsel and litigate their cases though to judgment. The Privacy Class is forward-

looking with the potential for new members to join the Class on an ongoing basis as young adults, new immigrants, and others establish public records.

59. Finally, members of the proposed Classes are spread out across the state and country, and include millions of low-income individuals who lack financial resources to bring an independent action or to be joined in this action. Putative members of both classes include countless young adults, persons presently engaged in job transitions, and persons searching for work after recent COVID-19 layoffs. These individuals are facing or have experienced Defendant's defamatory and otherwise inaccurate postings frustrating their efforts to obtain new work; thus, it is reasonable to assume they would also be unable to afford counsel to bring their own separate action against Defendant.

60. **Commonality:** All persons comprising the proposed Classes are equally suited in that all individuals are presently subject to unauthorized release of their personal information otherwise protected under federal law.

61. With regard to the Defamed Class, Defendant incorrectly posts that all individuals with similar minor driving violations, petty misdemeanors, or other non-criminal citations have "criminal or arrest" records, a statement that is untrue.

62. Accordingly, Plaintiff raises claims based on questions of law and fact that are common to, and typical of, the putative class members of both Classes he seeks to represent. Common questions of fact include:

    a. Whether Defendant assures that individuals accessing their reports have a permissible purpose.

    b. Whether Defendant states that individuals without criminal records have such records.

c. Whether individuals have suffered harm.

63. Common questions of law include:

   a. Whether individuals with minor non-criminal driving offences can be said to have "criminal or arrest records";

   b. Whether the Communications Decency Act immunizes Defendant;

   c. Whether the Defendant is a Consumer Reporting Agency;

64. The relief sought for each proposed Class is common to all members of that respective Class. Plaintiffs seek relief declaring Defendant a consumer reporting agency as defined by 15 U.S.C. 168a(f) and declaring that Defendant's assembled pages are consumer reports as defined by 1681a(d). They additionally seek: (a) an order requiring Defendant to assure users of its reports have a permissible purpose, (b) monetary relief for past unauthorized disclosures; (c) monetary relief for Defendant's failure to assure maximum possible accuracy of their reports; and/or (d) in the alternative, monetary relief for Defamation.

65. **Typicality:** The claims of Plaintiff are typical of the claims of the Privacy Class as Plaintiff and all members have suffered and will continue to suffer harm from the unauthorized disclosure of their personal information.

66. The claims of Plaintiff are typical of the claims of the Defamed Class as Plaintiff and all members have suffered and will continue to suffer the same direct, irreparable injury, including loss of reputation and general standing in the community.

67. Because Plaintiff and the proposed Future Revocation Class challenge the same conduct of Defendant, the Defendant will likely assert similar defenses against Plaintiff and the proposed Class members. Moreover, the answer to whether the Defendant is a consumer

reporting agency and issues consumer reports as defined by the FCRA and whether various statutory immunities are applicable to Defendant (including the CDA) will determine the success of the claims of the named Plaintiff and every other proposed Class member. If Plaintiff succeeds in the claim that Defendant has violated the FCRA and that the CDA does not apply with respect to defamation, that ruling will likewise benefit every other member of the proposed Class.

68. **Adequacy:** Plaintiff will fairly and adequately represent the interests of the proposed Classes he seeks to represent.

69. Plaintiff has no interests separate from, or in conflict with, those of the proposed Classes he seeks to represent and seeks no relief other than the monetary, declaratory, and injunctive relief sought on behalf of the entire proposed Classes.

70. **Rule 23(b)(2):** Class action status under Rule 23(b)(2) is appropriate because the Defendant has acted or failed and/or refused to act on grounds that generally apply to the proposed Classes, such that preliminary and final monetary, injunctive, and declaratory relief is appropriate and necessary with respect to each member of both Classes. Specifically, pursuant to the Fair Credit Reporting Act, the Defendant has automatically and systematically produced defamatory reports in violation of the FCRA—without adopting procedures to assure maximum possible accuracy (or, in actuality, has adopted procedures to willfully misstate information about individuals) and has freely distributed consumer reports without assuring a permissible purpose as required by the statute. These acts and omissions are generally applicable to both of the proposed Classes. Similarly, Defendant has added to third party content in an effort to make the information have as negative an effect as possible on consumer reputations and, in so doing, has

systematically defamed individuals—behavior that is generally applicable to the Defamed Class.

71. Accordingly, (a) a declaration that Defendant is a CRA and must act as such; (b) an injunction prohibiting Defendant from assembling reports without assuring maximum accuracy; (c) an injunction that prohibits Defendant from distributing reports without assuring individuals and companies obtaining them certify a permissible purpose; and (d) monetary relief for all individuals harmed by Defendant's illegal content to date, would benefit every member of each of the proposed Classes.

72. **Rule 23(g):** Plaintiff respectfully requests that the undersigned be appointed as Class Counsel. Counsel is well suited to represent the class as counsel has extensive experience representing individuals in matters involving complex consumer rights matters in federal court and has ample knowledge of the relevant statutory law. Counsel has previously litigated matters against Defendant in Federal Court and before the American Arbitration Association. Given such experience, Counsel is well educated in Defendant's practice of violating the FCRA and the defenses previously asserted by the company. Counsel is similarly financially capable of hiring additional subject matter experts and subordinate counsel with extensive experience in class-action litigation. Counsel has the resources, expertise, and experience to prosecute this action.

## FIRST COUNT
### Negligent Noncompliance with the FCRA
(On behalf of Plaintiff and All Classes)

73. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

22. Defendant negligently failed to comply with the requirements of the FCRA, including but not limited to:

    a.    failing to comply with the requirements of 15 USC § 1681b by assuring that users of their system have a permissible purpose for use of the consumer reports Defendant produces;

    b.    failing to follow reasonable procedures to limit the furnishing of consumer reports to the purposes listed under section 1681b of the FCRA, as required by 15 USC § 1681e(a);

    c.    failing to follow reasonable procedures to assure maximum possible accuracy of the information in reports concerning Plaintiff and other class members, as required by 15 USC § 1681e(b);

    d.    failing to comply with the requirements of 15 USC § 1681g;

23. As a result of Defendant's failure to comply with the requirements of FCRA, Plaintiff and all potential class members have suffered, and continue to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems, for which Plaintiff and the class members seek damages in an amount to be determined by a jury.

24. Plaintiff requests attorney's fees pursuant to 15 USC § 1681o(a).

**SECOND COUNT**

**Willful Noncompliance with FCRA**

(On behalf of Plaintiff and All Classes)

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

26. Defendant willfully failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to follow reasonable procedures to limit the furnishing of consumer reports to the purposes listed under section 1681b of the FCRA, as required by 15 USC § 1681e(a);

   b. failing to comply with the requirements of 15 USC § 1681b;

   c. failing to follow reasonable procedures to assure maximum possible accuracy of the information in reports concerning Plaintiff, as required by 15 USC § 1681e(b);

   d. failing to comply with the requirements of 15 USC § 1681g;

   e. failing to comply with the requirements of 15 USC § 1681i; and

   f. failing to comply with the requirements of 15 USC § 1681c-2.

27. As a result of Defendant's failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with his normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems, for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

28. Plaintiff requests attorney's fees pursuant to 15 USC § 1681n(a).

## THIRD COUNT

### Common Law Defamation

Pled in the Alternative

75. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76. Defendant publicly posted false information about Plaintiff; to wit: Plaintiff has arrest and/ or criminal records.

77. Defendant, in an effort to raise the stakes, further stated, "Brion's report may contain **graphic content and sensitive details**." (Emphasis original.)

78. Defendant's statement that Mr. Finlay's report contained graphic content was known to be false at the time Defendant made the statement.

79. Said statements regarding Plaintiff's arrest or criminal records were false in that Plaintiff has no criminal or arrest record.

80. Defendant's statements were purposefully intended to harm Plaintiff and thereby incentivize him to pay money to remove the harmful content.

81. Defendant's statements did, indeed, harm Plaintiff's reputation and/ or standing in the community.

82. Defendant's actions constitute defamation per se.

### Prayer for Relief

WHEREFORE, Plaintiff, by and through his attorney, respectfully prays for a reasoned Award in favor of Plaintiff and against Defendant as follows:

a. all actual compensatory damages suffered;

b. statutory damages in an amount up to $1,000.00, pursuant to 15 U.S.C. §1681n;

    d.    injunctive relief prohibiting such conduct in the future;

    e.    reasonable attorney's fees, litigation expenses, and cost of suit; and

    f.    any other relief deemed appropriate by this Honorable Court.

Dated: April 16, 2020                Madgett & Klein, PLLC

                                        <u>s/ David J.S. Madgett</u>
                                        David J.S. Madgett (#0390494)
                                        1161 E Wayzata Blvd, Suite 314
                                        Wayzata, MN 55391
                                        (612) 470-6529
                                        dmadgett@madgettlaw.com

                                        ATTORNEYS FOR PLAINTIFF